**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **SEPT. 17, 2007**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY:  s/ Ronnie Plasner, DEPUTY

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: | Case No.: 06-17415 (DHS) |
| **BEST MANUFACTURING GROUP LLC,** | Chapter: 7 |
| Debtor. | Judge: Donald H. Steckroth, U.S.B.J. |

### OPINION

**APPEARANCES:**

Day Pitney LLP
Scott A. Zuber, Esq.
Michael P. Turner, Esq.
P.O. Box 1945
Morristown, New Jersey 07962
*Counsel for Marathon Structured Finance Fund LP*

Waller, Lansden, Dortch & Davis LLP
John C. Tishler, Esq.
511 Union Street, Suite 2700
Nashville, Tennessee 37219
*Co-Counsel for CapitalSource Finance LLC*

Teich Groh
Brian W. Hofmeister, Esq.
691 State Highway 33
Trenton, New Jersey 08619
*Co-Counsel for CapitalSource Finance LLC*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion to compel the sharing of proceeds from sales of assets of Best Manufacturing Group LLC (hereinafter "Debtors")[1] relating to losses incurred on debtor-in-possession loans ("Motion"). On March 26, 2007, Marathon Structured Finance Fund LP (hereinafter "Marathon"), as agent for the debtor-in-possession lenders, filed the Motion seeking to require CapitalSource Finance LLC (hereinafter "CapitalSource") to share ratably sums received by CapitalSource on account of a separate guaranty agreement, as those sums allegedly relate to debtor-in-possession losses. Capital Source filed an objection in which it argues that: (i) this Court lacks jurisdiction to consider the relief sought; (ii) the relief requested requires an adversary complaint and proceeding; and (iii) the lending agreement explicitly provides CapitalSource the ability to enter into a separate risk participation agreement.

For the following reasons, Marathon's motion to compel CapitalSource to share ratably all sums received under the guaranty agreement relating to the sales of assets is denied for lack of subject matter jurisdiction.

**Statement of Facts and Procedural History**

On August 9, 2006, the Debtors filed separate voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[2] The Debtors' cases were subsequently converted to proceedings under Chapter 7 on May 3, 2007. In order to finance their reorganization, the Debtors requested a senior secured super-priority revolving credit facility in excess of $84,000,000 from a group of lenders

---

[1] The Debtors include Best Manufacturing Group LLC, H.W. Baker Linen Co. LLC, Best Realty of New Jersey LLC, H.W. Baker U.S., Inc. and Best: Artex LLC.

[2] An Order of joint administration was entered on August 11, 2006.

including Marathon and CapitalSource. *Marathon's Application in Support of its Motion for an Order Requiring CapitalSource to Share Sums Received Pro-Rata* (hereinafter "*Marathon's Application*"), ¶ 3; *CapitalSource's Objection to Marathon's Application in Support of its Motion for an Order Requiring CapitalSource to Share Sums Received Pro-Rata* (hereinafter "*CapitalSource's Objection*"), ¶ 2. In addition to its status as a lender, Marathon also acted as collateral agent. *Id.*

On September 28, 2006, this Court entered an Order which authorized the Debtors to obtain credit, incur indebtedness, and encumber assets as collateral. The terms of the Debtor-In-Possession Credit and Security Agreement include: (i) a revolving credit facility in the amount of $5,000,000; (ii) a Term Loan A credit facility in excess of $62,000,000; and (iii) a Term Loan B credit facility in the amount of $17,000,000 (hereinafter "DIP Loan Agreement"). *Marathon's Application*, Exhibit A; *CapitalSource's Objection*, Exhibit A. Each lender committed a certain percentage of each facility as recited in the Credit Agreement. *Marathon's Application*, ¶ 6.

On December 20, 2006, this Court entered an Order: (i) authorizing the Debtors to sell their assets constituting the "Baker Division" free and clear of liens, claims and encumbrances pursuant to Section 363; (ii) authorizing assumption and assignment or rejection of certain related executory contracts and unexpired leases; and (iii) granting related relief (hereinafter "Baker Division Sale Order"). The Baker Division Sale Order named GHCL, Inc. as purchaser. Prior to the sale, GHCL, Inc. assigned its rights to purchase the Baker Division to Dan River, Inc. (hereinafter "Dan River"). *CapitalSource's Objection*, ¶ 4.

On or about February 9, 2007, this Court entered an Order: (i) authorizing sale of substantially all of the Debtors' remaining assets free and clear of liens, claims or encumbrances

pursuant to Section 363; (ii) authorizing assumption and assignment of certain related executory contracts and unexpired leases; (iii) approving rejection procedures for remaining contracts and leases; and (iv) granting related relief (hereinafter "Second Sale Order").

The sums generated by the sales were distributed pursuant to Section 2.2 of the Credit Agreement. *Marathon's Application*, ¶ 10. The revolving credit facility balance was fully satisfied. Approximately $23,000,000 remains due and owing on Term Loan A. *Id.* No payment was made on Term Loan B. *Id.*

On April 20, 2006, CapitalSource entered into a credit agreement with Dan River, the subsequent purchaser of the Baker Division, with other parties acting as guarantors ("hereinafter Dan River Loan Agreement"). *Id.* at ¶ 12; *CapitalSource's Objection*, ¶ 5. The guarantors later requested that CapitalSource consent to Dan River's acquisition of the Baker Division. *Marathon's Application*, ¶ 12; *CapitalSource's Objection*, ¶ 5. In response and on December 22, 2006, CapitalSource and the guarantors entered into an amendment of the Dan River Loan Agreement and a separate guaranty agreement (hereinafter "Dan River Guaranty Agreement"). *Id.* Sections 2 and 3 of the Dan River Guaranty combine to provide CapitalSource a backstop of up to $3,750,000 on account of losses in connection with the DIP Loan Agreement. *See Dan River Guaranty*, §§ 2-3, *Marathon's Application*, Exhibit C. Any funds payable to CapitalSource under the Dan River Guaranty would be due and owing by the guarantors, not the Debtors. Those entities would then be entitled to assert a claim against the Debtors for all payments made to CapitalSource under the Dan River Guaranty, by virtue of a right of subrogation contained therein. *Id.* at § 4.

Section 2.11(d) of the DIP Loan Agreement provides that each lender or participant shall ratably share excess payment or benefits received on "its Advances or interest thereon, or receive

any Collateral in respect thereof (whether voluntarily or involuntarily or by set-off) in a greater proportion that any such payment to and Collateral received by any other Lender having the same commitment. . . ." *DIP Loan Agreement*, § 2.11(d), *Marathon's Application*, Exhibit A.

Section 17.3(b) of the DIP Loan Agreement in turn provides that each lender may sell its interest in "Advances" without notice or consent, and that remaining lenders "may exercise all rights of payment (including without limitation rights of set-off) with respect to the portion of such Advances held by it or other Obligations payable hereunder as fully as if such Participant were the direct holder thereof. . . ." *DIP Loan Agreement*, § 17.3(b), *Marathon's Application*, Exhibit A.

The existence of the Dan River Guaranty was disclosed, despite an underlying confidentiality agreement, prior to entry of the Second Sale Order. On the record, at the sale hearing that resulted in the Second Sale Order, Marathon reserved its rights as to the Dan River Guaranty. Despite the two sales, CapitalSource, as a Term Loan A lender, suffered losses in excess of the $3,750,000 guaranteed. *CapitalSource's Objection*, ¶ 12. Approximately $468,750 in proceeds from the sales are currently being withheld from CapitalSource by, *inter alios*, Marathon. *Id.*

The fundamental dispute here is between the Term Loan A lenders regarding the sharing of sale proceeds. Marathon, as agent for the lenders, seeks to compel CapitalSource to share all distributions it may receive under the Dan River Guaranty. Its argument hinges on interpretation of the DIP Loan Agreement and the Dan River Guaranty. CapitalSource objects and argues: (i) that this Court lacks jurisdiction over this inter-creditor dispute; (ii) assuming, *arguendo*, this Court has jurisdiction an adversary proceeding is required pursuant to Bankruptcy Rule 7001(1) as this motion constitutes an attempt to recover money; and (iii) even if the Motion is considered at this time, the Dan River Guaranty is a risk participation agreement permitted by the DIP Loan Agreement.

## Discussion

**Jurisdiction**

District courts maintain jurisdiction over bankruptcy proceedings pursuant to 28 U.S.C. § 1334. The district courts exercise original and exclusive jurisdiction over all cases arising under Title 11 and original, but not exclusive, jurisdiction of civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a, b). "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).

> It is well-settled that the bankruptcy court potentially has jurisdiction over four types of title 11 matters, pending referral from the district court: (1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11.

*Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.)*, 72 F.3d 1171, 1175 (3d Cir. 1996) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 264 (3d Cir. 1991); citing *see* 28 U.S.C. § 1334). The bootstrapping of jurisdiction is not permitted. "At a minimum, . . . all claims filed in bankruptcy court must be able to stand on their own as either core or related proceedings." *In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1182.

A "'proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 267 (quoting *Beard v. Braunstein*, 914 F.2d 434, 444 (3d Cir. 1990) (other citations omitted)). The proper focus is upon whether the claims, and not

simply a factual circumstance, falls within the exclusive list of core proceedings. *See Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006) (citation omitted). Core proceedings, especially those enumerated by Sections 157(b)(2)(A) and (O), are to be interpreted narrowly so as not to bring every proceeding under the core definition, and should be defined by the Third Circuit test set forth in *In re Marcus Hook Dev. Park, Inc. See In re Adams*, 106 B.R. 811, 815 (Bankr. D.N.J. 1989) (citing 130 CONG. REC. H 7492, 98th Cong., 2d Sess. *reprinted* in 1984 U.S.C.C.A.N. 576, 579).

Here, Marathon relies upon *Resolution Trust Co. v. Best Products Co., Inc. (In re Best Products Co., Inc.)*, 68 F.3d 26 (2d Cir. 1995) as factually analogous precedent in support of its argument that the instant matter involves this Court's core subject matter jurisdiction under 11 U.S.C. § 157(b)(2)(A) as this matter affects the administration of the Debtors' bankruptcy estate.

In *In re Best Products Co., Inc.*, the United States Bankruptcy Court for the Southern District of New York enforced a subordination agreement between two non-debtor entities, namely debtor-in-possession lenders, as part of the debtor's plan upon confirmation. *See id.* at 28. Appeals were taken to the district court and subsequently to the Second Circuit Court of Appeals. The Second Circuit Court of Appeals affirmed the bankruptcy court and held that "the bankruptcy court had jurisdiction over a core proceeding to enforce a contractual subordination agreement between parties that had filed proofs of claim against the Debtor's estate." *Id.* at 33. In so doing, the court focused almost exclusively upon the fact that the outcome of litigation regarding the subordination agreement would affect the priority positioning of claims as well as adjustment of the debtor-creditor relationship. *See id.* at 31-32. Thus, "[s]ettlement of this dispute [was] essential to the administration of the estate" and constituted a core proceeding under Section 157(b)(2)(A) of the Bankruptcy Code. *Id.* at 31. Moreover, in response to the argument that the debtor had no interest

in the outcome of the dispute, the court fell back upon the fact that briefs were filed by the debtor arguing for enforcement of the agreement. *See id.* at 32. Therefore, the court did not need to rely solely upon proofs of claim filed to determine jurisdiction. *See id.*

*In re Best Products Co., Inc.* is easily distinguishable from the case at bar. The circumstances *sub judice* involve a subrogation agreement. Unlike the subordination agreement in *Best Products*, the subrogation does not affect the priority of claims or the debtor-creditor relationship. Instead, here, the subrogation agreement merely permits the guarantors to stand in the shoes of CapitalSource and its affect is only as to the distribution of sale proceeds relating to assets which no longer constitute part of the bankruptcy estate. This is the case even if the Court were to hold that the Dan River Guaranty was invalid. Moreover, neither Marathon nor CapitalSource have filed a proof of claim. Finally, as proof that the Debtors and bankruptcy estate are unaffected, it is noted that the Debtors did not file a response or take a position in response to the instant motion. This Court has previously countenanced that its jurisdiction is limited by statute and that its powers to administer a bankruptcy estate are not to be used broadly and are to be given narrow construction. *See In re Adams*, 106 B.R. at 815 (citing 130 CONG. REC. H 7492, 98th Cong., 2d Sess. *reprinted* in 1984 U.S.C.C.A.N. 576, 579). As a result, the Court finds it improper to expand the use of Section 157(b)(2)(A) to encompass almost any proceeding arising within the context of a bankruptcy case.

Marathon argues further that core jurisdiction exists given that the DIP Loan Agreement and the sale of the Baker Division assets were authorized by Orders of this Court. This argument also misses the mark. The focus of core jurisdiction is not upon the facts or circumstances leading up to the dispute. Instead, the focus is upon whether the claims fall within the exclusive list of core

proceedings. *See Stoe*, 436 F.3d at 218 (citation omitted). As stated previously, the claims relating to the validity or affect of the Dan River Guaranty do not arise solely in the context of a bankruptcy case and do not constitute a core proceeding.

Admittedly, a proceeding is non-core if its outcome "could conceivably have any effect on the estate being administered in bankruptcy. . . ." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 226 (3d Cir. 2004) (citation omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* Certainty or likelihood is not the threshold standard. *See In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1181. Instead, non-core jurisdiction operates if there exists a mere possibility of impact on the administration of the estate. *See id.* (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 264). However, "if the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction." *In re Guild & Gallery Plus, Inc.*, 72 F.3d at 1181 (citations omitted). "'[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of [a non-core proceeding]. Judicial economy itself does not justify federal jurisdiction.'" *Id*.

"Cases involving relief between two non-debtors fall under the . . . category of 'related to' jurisdiction. *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 502 (Bankr. D.N.J. 1997) (citing *Quattrone Accountants, Inc. v. Internal Revenue Serv.*, 895 F.2d 921, 926 (3d Cir. 1990); *see also Donaldson v. Bernstein*, 104 F.3d 547, 552 (3d Cir. 1997) ("since the third category is the broadest, a court "need only determine 'whether a matter is at best related to the bankruptcy'"") (quoting *In re Marcus*

*Hook Dev. Park, Inc.*, 943 F.2d at 264 (citations omitted))). However, a court lacks "related to" jurisdiction over a dispute between non-debtor parties if the action does not involve property of the estate and would not effect the estate. *See Guarino v. DVI Fin. Servs., Inc. (In re DVI, Inc.)*, 324 B.R. 548, 553 (Bankr. D. Del. 2005) (citing *see, e.g., Saul Ewing Remick & Saul v. Provident Sav. Bank*, 190 B.R. 771, 776 (D. Del. 1996) ("[A] court has 'related to' jurisdiction over property only when the property is part of the bankruptcy estate.") (other citation omitted)). Stated otherwise, "[t]o fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor." *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022 (5th Cir. 1999) (citation omitted). "Jurisdiction over non[-]bankruptcy controversies with third parties who are otherwise strangers to the civil proceedings and to the parent bankruptcy does not exist." *Davis v. Griffin Co. (In re Resorts Int'l, Inc.)*, 128 B.R. 78, 97 (Bankr. D.N.J. 1990) (citations omitted); *DVI Fin. Servs., Inc. v. Nat'l Med. Imaging, LLC (In re DVI, Inc.)*, 305 B.R. 414, 417 (Bankr. D. Del. 2004) (citations omitted); *In re Fed.-Mogul Global, Inc.*, 282 B.R. 301, 306 (Bankr. D. Del. 2002) (citations omitted).

Here, the dispute involves assets sold out of the bankruptcy estate and is between non-debtor parties. The distribution of the sale proceeds neither affects the administration of the bankruptcy estate nor the priority of claims. Instead, it constitutes an action cognizable under state law which relates to circumstances, but not claims, arising out of the bankruptcy. As such, this Court lacks jurisdiction over the dispute. *See In re DVI, Inc.*, 324 B.R. at 553 (a court lacks subject matter jurisdiction over adversarial claims arising out of an agreement regarding a sale of property which no longer constitutes part in parcel of the bankruptcy estate in a Chapter 11 proceeding).

**Conclusion**

Based upon the foregoing, the Motion to compel CapitalSource to share funds received on account of the Dan River Guaranty is denied for lack of subject matter jurisdiction.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

*/s/ Donald H. Steckroth*

---

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: September 17, 2007